NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-537

GIUSEPPE CRACCHIOLO & another[1]

vs.

BRADLEY K. BASS & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2023, a panel of this court affirmed a 2022 judgment, entered by a Land Court judge in two underlying actions,[3] for specific enforcement of the parties' settlement agreement under which the defendants agreed to sell certain real property to the plaintiffs on or before June 30, 2022.  Cracchiolo v. Bass, 103

---

[1] Maria Cracchiolo.

[2] Jean E. Bass and Catherine A. Barry, as personal representatives of the estate of Cindy L. Bass; neither is a party to this appeal.  Bradley Bass is sued in his individual capacity and as personal representative of the estate of Cindy L. Bass.

[3] The plaintiffs filed suit in both the Superior Court and the Land Court.  The Land Court judge was interdepartmentally assigned as a justice of the Superior Court to handle the Superior Court claims in addition to those asserted in the Land Court complaint.

Mass. App. Ct. 1110 (2023).  Further appellate review was denied.  After issuance of this court's rescript affirming the judgment, the judge issued an order to enforce it, dated January 29, 2024 (enforcement order).  Among other things, the enforcement order set a closing date of February 29, 2024, and required the defendants to convey good, clear, and marketable title, by satisfying the balance of any liens on the property not paid from the purchase price.  The defendant Bradley K. Bass appealed.  We affirm the enforcement order.

1.  <u>Closing date</u>.  Pointing to the fact that the settlement agreement's original closing date was June 30, 2022, and the judgment required specific enforcement of that agreement, Bass argues that the judge had no jurisdiction or authority to "modify" either the judgment or the settlement agreement by setting a new closing date of February 29, 2024.  We conclude that his arguments are not only unpersuasive, but frivolous.

Bass asserts that under the principle of functus officio, a court's jurisdiction ends once final judgment has issued, unless the judgment itself explicitly reserves the court's power of modification or else a party seeks modification under procedures such as those established by Mass. R. Civ. P. 60, 365 Mass. 828 (1974).  But "it is doubtful the principle [of functus officio] continues to be recognized outside the arbitration context."  <u>Bank of Am., N.A.</u> v. <u>Casey</u>, 474 Mass. 556, 563 (2016).  Even if

2

the functus officio principle retains any broader vitality, Bass cites no authority for applying it to a court's judgment or its jurisdiction, as opposed to an arbitrator's award or a document prepared by party. See id. at 562.

In any event, the 2022 judgment ordered and declared that the settlement agreement "will be specifically enforced," thus expressly recognizing that further enforcement orders could be issued if the parties did not perform their obligations under the settlement agreement. A court's power to do so is reserved by Mass. R. Civ. P. 70, 365 Mass. 836 (1974). See G. L. c. 185, § 25A (Land Court's authority to enforce its judgments). "Among a judge's inherent powers is the authority to make the court's lawful orders effective." Beit v. Probate & Family Court Dep't, 385 Mass. 854, 859 (1982).

Although the settlement agreement specified a June 30, 2022 closing date and stated that time was of the essence, such a provision may be waived by a party's words or conduct. See McCarthy v. Tobin, 429 Mass. 84, 89 (1999) ("Once there was a waiver, time was no longer of the essence"). Here, the defendants' refusal to close by June 30, 2022 -- because they wished to appeal the judgment requiring specific performance of the settlement agreement -- constituted a waiver of their right to insist on the closing date specified in the agreement.

3

Similarly, judicial estoppel bars Bass from asserting, as he now does, that he had no obligation to close once the original closing date passed. "Judicial estoppel bars a party from asserting a position directly inconsistent with, meaning mutually exclusive of, the position asserted in a prior proceeding where the party convinced the court to accept its prior position." Bay State Gas Co. v. Department of Pub. Utils., 459 Mass. 807, 818 (2011). Here, after the 2022 order for specific performance, Bass sought and obtained a stay pending appeal. Bass asked "that the status quo be maintained in this case, as [he] will not be carrying out the order of the court to convey the title until the appeal process is complete." The judge was entitled to rely on this statement as a representation that Bass, if he lost the appeal, would convey the property as ordered by the judge. Moreover, it was clear that the appeal process, once initiated by Bass's notice of appeal filed on June 23, 2022, would not be complete by the June 30, 2022 closing date. Bass thus implicitly agreed that, if he lost the appeal, a new closing date could and would be established. Having persuaded the judge to grant a stay pending appeal, Bass cannot now repudiate the statements he made in order to obtain the stay.

Specific performance is within a court's general equity jurisdiction. See Lonergan v. Highland Trust Co., 287 Mass.

4

550, 559 (1934). It would be inequitable in the extreme for a party to violate its obligation to perform by the contractual deadline, and then, in response to an action seeking specific performance, escape the party's obligation on the ground that the deadline had passed and the contract could no longer be performed. Similarly, when there is an appeal from a decree for specific performance of an agreement to convey real property by a date certain, and that date has passed by the time the decree is held otherwise valid on appeal, "[t]he decree must be modified . . . as to the time fixed for performance." Epdee Corp. v. Richmond, 321 Mass. 673, 676 (1947). See Goren v. Royal Invs. Inc., 25 Mass. App. Ct. 137, 143 (1987) (affirming judgment for specific performance, as modified to require closing within thirty days of issuance of rescript). This is not a modification of the underlying agreement itself, but rather a modification of the court's order enforcing the agreement.[4] See id. Cf. Normandin v. Eastland Partners, Inc., 68 Mass. App. Ct. 377, 391 (2007) (judgment for specific

---

[4] Even if the enforcement order were viewed as having modified the settlement agreement, Bass, as discussed supra, had already waived his right to insist on the original closing date. And he had already implicitly agreed, by appealing from the order for specific performance and obtaining a stay pending appeal, that if the order were affirmed, he would not object to a new closing date being established.

5

performance did not alter parties' agreements, but only manner in which one party was to perform its contractual obligation).

2. Other issues. Bass asserts that the enforcement order, in requiring the defendants to satisfy the balance of any liens on the property not paid from the purchase price, impermissibly required them to "pay a debt they were not contractually bound to [pay]." This claim is frivolous. Paragraph three of the settlement agreement obligated the defendants to pay "any other mortgages and liens encumbering the [s]ubject [p]roperty."

Bass also claims the judge, in "modifying the settlement agreement," engaged in "judicial overreach" and exhibited "potential bias." We have carefully reviewed the record and see no basis for this claim. We see no modification of the settlement agreement, no action in excess of the judge's remedial authority, and no hint of bias. To the contrary, the judge displayed admirable patience throughout the proceedings.

Bass claims that the judge's "decision to alter the settlement agreement without providing [him] with notice and an opportunity to be heard violated his due process rights." The judge did not modify the settlement agreement, however, and in any event, the docket plainly shows that Bass was given ample notice and opportunity to be heard before the judge entered the enforcement order.

6

Bass's reply brief asserts that the order for specific performance of the settlement agreement is impractical and unfairly burdensome. These arguments, raised for the first time in the reply brief, need not be considered. See Mass. R. A. P. 16 (c), as appearing in 481 Mass. 1628 (2019); Travenol Labs., Inc. v. Zotal, Ltd., 394 Mass. 95, 97 (1985).

3. Attorney's fees. The plaintiffs request an award of their appellate attorney's fees and costs, on the ground that Bass's appeal is frivolous. "An appeal is considered frivolous when the underlying case law is settled and there is no reasonable expectation of a reversal." Pierce v. Clark, 66 Mass. App. Ct. 912, 915 (2006). See Mass. R. A. P. 25, as

appearing in 481 Mass. 1654 (2019).  We allow the plaintiffs'

request.[5]

Order on motion for order
  concerning sale of real
  estate, dated January 29,
  2024, affirmed.

By the Court (Desmond,
  Sacks & Brennan, JJ.[6]),

Clerk

Entered: June 5, 2025.

---

[5] In accordance with the procedure specified in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), the plaintiffs may, within fourteen days of the issuance of this decision, submit an application for appellate attorney's fees and costs with the appropriate supporting materials.  Bass shall have fourteen days thereafter to respond.  The plaintiffs are reminded of the limitations on appellate fees recognized in the panel's final attorney's fees order dated January 3, 2024, in the prior appeal.

[6] The panelists are listed in order of seniority.