# United States Court of Appeals
## For the First Circuit

No. 24-1101

IN RE: ANDY LUU TRAN,

Debtor.

_____

ANDY LUU TRAN,

Appellant,

v.

CITIZENS BANK, N.A., f/k/a RBS Citizens, N.A.; HERBERT JACOBS,

Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

_____

Before

Barron, Chief Judge,
Breyer,* Associate Justice,
and Kayatta, Circuit Judge.

_____

David G. Baker, for appellant.
John F. Willis, with whom Fidelity National Law Group was on brief, for appellee Herbert Jacobs.**

_____

* Hon. Stephen G. Breyer, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

** Appellee Citizens Bank, N.A. did not file a brief and was not heard at oral argument. See Fed. R. App. P. 31(c).

July 1, 2025

**KAYATTA, Circuit Judge.** This appeal arises out of an adversary action filed in a Chapter 13 proceeding in the U.S. Bankruptcy Court for the District of Massachusetts. Under the "strong arm" provision of the Bankruptcy Code, 11 U.S.C. § 544(a)(3), the debtor, Andy Luu Tran, seeks to avoid the transfer of his interest in his Massachusetts home (the "Property") because the foreclosure deed was recorded without an accompanying certificate of acknowledgment. The bankruptcy court granted summary judgment against Tran; the district court affirmed. Tran timely appealed. For the following reasons, we affirm the judgment of the bankruptcy court.

## I.

The facts are undisputed. In 2008, Tran granted Citizens Bank, N.A. (the "Bank") a mortgage on the Property. In 2022, the Bank foreclosed on the Property at an auction sale in which Herbert Jacobs was the high bidder. Jacobs and the Bank executed a memorandum of sale at the close of the auction. Subsequently, the Bank recorded an affidavit of sale stating the purchase price and Jacobs's identity and confirming that the sale complied with notice requirements under Massachusetts law. See Mass. Gen. Laws ch. 244, § 15(b) (2024) (requiring an affidavit of sale "fully and particularly stating the person's acts" to be recorded in the registry of deeds); id. § 14 (2024) (stating the notice requirements for a foreclosure sale). A foreclosure deed was

- 3 -

recorded along with the affidavit of sale; however, the deed did not include the signature page required under Massachusetts law. See Mass. Gen. Laws ch. 183, § 29 (2024) ("No deed shall be recorded unless a certificate of its acknowledgment or of the proof of its due execution . . . is endorsed upon or annexed to it . . . .").

Jacobs subsequently served on Tran a notice to vacate premises. The next day, Tran filed a Chapter 13 bankruptcy petition, and, a day later, an adversary complaint in the bankruptcy court seeking to avoid what he termed the "transfer of title" that occurred at foreclosure due to the improperly recorded deed. Tran then filed motions for judgment on the pleadings on the adversary complaint, which the bankruptcy court converted to motions for summary judgment. The Bank and Jacobs filed cross-motions for summary judgment on Tran's adversary complaint.

Ruling in the adversary proceeding, the bankruptcy court first held that, under § 544's "strong arm" provision, the only "transfer" that occurred at foreclosure was of Tran's equity of redemption, because legal title at that point was with the Bank. And Tran's equity of redemption, the court held, was extinguished at the conclusion of the foreclosure auction by the execution of the memorandum of sale between the Bank and Jacobs. Delivery of the deed thereafter only "implicate[d] certain limited rights" which "d[id] not revive [Tran's] extinguished equity of

- 4 -

redemption." Although the bankruptcy court assumed Tran had standing under 11 U.S.C. § 522(h) to proceed in the trustee's shoes for the purposes of an avoidance action under § 544, it held that, under Massachusetts law, the properly recorded affidavit of sale "provide[d] constructive notice to a hypothetical good faith purchaser . . . and, as such, a trustee could not avoid the transfer (extinguishment) of the Debtor's equity of redemption on the Property." Given that holding, the court did not reach the issue of whether a deed without a signature page provided constructive notice. The bankruptcy court also rejected Tran's motion for relief from the judgment on the same grounds. See Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023.

Tran appealed to the U.S. District Court for the District of Massachusetts, which affirmed the decision of the bankruptcy court. Tran now appeals to us.

## II.

This court "review[s] the bankruptcy court's decision directly, despite the intermediate district-court decision." U.S. Bank, N.A. v. Desmond (In re Mbazira), 15 F.4th 106, 111 (1st Cir. 2021). "We assess the bankruptcy court's factual findings for clear error and its legal conclusions de novo." Id.

### A.

"Chapter 5 of the Bankruptcy Code affords bankruptcy trustees the authority to 'set aside certain types of transfers

- 5 -

and recapture the value of those avoided transfers for the benefit of the estate.'" Merit Mgmt. Grp., LP v. FTI Consulting, Inc., 583 U.S. 366, 370 (2018) (cleaned up) (quoting Charles J. Tabb, Law of Bankruptcy § 6.2, at 474 (4th ed. 2016)). The "strong arm" provision grants such authority, stating that a trustee

> may avoid any transfer of property of the debtor . . . that is voidable by . . . a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a), (a)(3). In other words, § 554(a) and (a)(3) "give[] the trustee the rights of a bona fide purchaser" such that "the trustee can avoid most unperfected and incomplete transfers of the debtor's . . . property." 1 Robert E. Ginsberg & Robert D. Martin, Ginsberg & Martin on Bankruptcy § 9.01[A], at 9-5 (Catherine J. Furay ed., 6th ed. 2022).

Moreover, "[a]lthough the statute . . . refer[s] to the trustee's right to avoid transfers under § 544, a debtor in possession . . . may also benefit from these avoiding powers" in some instances. Id. § 9.01[A][1], at 9-6; see 11 U.S.C. § 522(h) ("The debtor may avoid a transfer of property . . . to the extent that the debtor could have exempted such property . . . if . . . such transfer is avoidable by the trustee under [§] 544 . . . .").

- 6 -

As a debtor in possession, Tran seeks to avoid the "transfer" of his interest in the Property under the "strong arm" provision.[1]  In order to assess his claim, we first decide what property interest is at stake and when any "transfer" occurred. See González v. Banco Popular De Puerto Rico (In re Cancel), 7 F.4th 23, 29 (1st Cir. 2021) ("The core question under 11 U.S.C. [§ 544(a)(3)] is whether under state law the debtor conveyed a property interest in the real property at issue . . . .").  We then consider whether a hypothetical bona-fide purchaser would have been able to avoid that "transfer."  See Stern v. Cont'l Assurance Co. (In re Ryan), 851 F.2d 502, 505-06 (1st Cir. 1988).

**B.**

On appeal, Tran claims two interests in the Property that he says support an avoidance action: first, his pre-foreclosure right (known as the equity of redemption) to redeem legal title to the Property by paying off the mortgage, and second, his post-foreclosure right to surplus proceeds after the sale, together with his possessory interest in the Property.  We address each in turn.

---

[1]  Following the parties' lead, we, like the bankruptcy court, assume that Tran has standing to bring this avoidance action as a debtor in possession under 11 U.S.C. § 522(h).

**1.**

Under Massachusetts law, a grant of a mortgage splits title into two parts: legal title to the mortgagee and equitable title to the mortgagor. Bevilacqua v. Rodriguez, 955 N.E. 2d 884, 894 (Mass. 2011). Upon default, the mortgagor's property interest is known as the equity of redemption, which consists of "the basic and historic right of a debtor to redeem the mortgage obligation after its due date" and regain legal title to the property. Id. (quoting Restatement (Third) of Prop.: Mortgs. ch. 3, intro. note (Am. L. Inst. 1997)).

Massachusetts law provides, however, that a mortgagor's equity of redemption persists only until the property has been sold via foreclosure. See Mass. Gen. Laws ch. 244, § 18 (2024) ("The mortgagor . . . may . . . redeem the land mortgaged . . . unless the land has been sold pursuant to a power of sale contained in the mortgage deed."). And Massachusetts courts have uniformly held that the foreclosure sale is complete at the close of the auction, when a memorandum of sale is executed between the mortgagee and the highest bidder. Williams v. Resol. GGF OY, 630 N.E.2d 581, 585 (Mass. 1994) ("The execution of the memorandum of sale terminated the plaintiffs' equity of redemption."); Outpost Cafe, Inc. v. Fairhaven Sav. Bank, 322 N.E.2d 183, 187 (Mass. App.

Ct. 1975) (interpreting Mass. Gen. Laws ch. 244, § 18[2] to mean that a mortgagor's right to redeem is extinguished at least as early as the time of execution of the memorandum of sale at the foreclosure sale); White v. Marcarelli, 166 N.E. 734, 736 (Mass. 1929) ("If a foreclosure sale is fairly conducted and there is no defect in the proceedings, the right of the intervenor to redeem is gone when the contract of sale was made with the purchaser at the auction.").

In sum, Tran did indeed have a property interest in the form of an equity of redemption, and that interest was extinguished at the foreclosure sale when the Bank and Jacobs executed a memorandum of sale. Further, the Bankruptcy Code is clear that "the foreclosure of a debtor's equity of redemption" is a "transfer" under the meaning of the Code. See 11 U.S.C. § 101(54)(C). Thus, as the bankruptcy court found, Tran's avoidance action gets to first base to the extent it is based on an attempt to recover his equitable interest in the Property, rather than legal title.

**2.**

Tran's effort to rely on his asserted post-foreclosure equity in the property as a basis for an avoidance action fares less well. Because this argument is floated for the first time

---

[2] The language of the provision interpreted by the Outpost Cafe court is substantively identical to that of the provision in force today. See Mass. Gen. Laws ch. 244, § 18 (2024).

before us, it receives, at best, plain-error review.  See Nat'l Fed'n of the Blind v. The Container Store, Inc., 904 F.3d 70, 85–86 (1st Cir. 2018).  And Tran makes no showing of plain error.  It is true that, after a memorandum of sale is executed at foreclosure, a mortgagor retains an entitlement to any surplus proceeds left over after the mortgage is paid.  See Mass. Gen. Laws ch. 183, § 27 (2024) ("The holder of a mortgage of real estate . . . out of the money arising from a sale under the power of sale shall be entitled to retain all sums then secured by the mortgage . . . rendering the surplus, if any, to the mortgagor . . . .");  Duclersaint v. Fed. Nat'l Mortg. Ass'n, 696 N.E.2d 536, 538–39 (Mass. 1998) ("Generally, a mortgagee must give a mortgagor any surplus generated at a foreclosure sale[, which is] . . . any amount recovered at a foreclosure sale above the amount owed to the mortgagee, including fees and costs." (citation omitted)).  In addition, Tran retains a possessory interest in the property, since he still resides there.

But Tran identifies no "transfer" of these interests, meaning there is nothing to "avoid."  See 11 U.S.C. § 544(a).  Nor can he revive his lost equity of redemption through these more limited interests.  See In re Crichlow, 322 B.R. 229, 237 (Bankr. D. Mass. 2004) (holding that a mortgagor's "limited rights . . . to receive any residual amounts it is due after the mortgagee's debt has been satisfied . . . do not revive the lost equity of

redemption"); Ray v. JP Morgan Chase & Co., No. 15 MISC 00507, 2016 WL 2854323, at *6 (Mass. Land Ct. May 16, 2016) (same). Tran also emphasizes that creditors are required to seek relief from the Bankruptcy Code's automatic stay before interfering with a debtor's post-foreclosure interests. See, e.g., In re Sullivan, 551 B.R. 868, 868-89 (Bankr. D. Mass. 2016) (reasoning that "a debtor's bare possessory interest" is "property of the estate" even if the debtor's other interests were extinguished at foreclosure (quoting Fed. Nat'l Mortg. Ass'n v. Fitzgerald (In re Fitzgerald), 237 B.R. 252, 258 (Bankr. D. Conn. 1999)). But he fails to explain how the fact that creditors would need to seek relief from the automatic stay to interfere with his remaining interests in the Property supports his ability to avoid the loss of his previous interests in the Property. In sum, there is no plain error here.

Thus, Tran's only route to regaining equitable title to the Property is by avoiding the foreclosure of his equity of redemption. We now turn to the key question: whether that "transfer" was "so far perfected as to be effective against a bona fide purchaser of that [property interest] from [Tran] under nonbankruptcy law." Ginsberg & Martin, supra, § 9.01[B], at 9-7.

## C.

In Massachusetts, a proper recording in the registry of deeds provides constructive notice, "a positive rule of state law

- 11 -

that permits the prior purchaser to gain priority over a latter purchaser, <u>regardless</u> of whether the latter purchaser really knows of the prior purchase." <u>In re Ryan</u>, 851 F.2d at 506. This form of notice "aris[es] by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of." <u>Bank of Am., N.A.</u> v. <u>Casey</u>, 52 N.E.3d 1030, 1040 n.21 (Mass. 2016) (quoting <u>Notice</u>, Black's Law Dictionary (10th ed. 2014)). Thus, a purchaser "has constructive notice (whether or not he has actual knowledge) of a prior deed if that deed is properly recorded." <u>In re Ryan</u>, 851 F.2d at 506.

Here, the same principles apply to the extinguishment of Tran's equity of redemption upon foreclosure. Tran argues that neither the improperly recorded foreclosure deed nor the properly recorded affidavit of sale was sufficient to provide constructive notice of that event. As support, he highlights this court's decision in <u>In re Mbazira</u>, 15 F.4th at 112. There, we considered whether a mortgage deed provided constructive notice of a mortgage encumbering registered land where, as here, the relevant deed lacked the required certificate of acknowledgment. <u>Id.</u> Reasoning that "the weight of precedent leans decidedly in favor of strictly construing the statutory requirement for certificates of acknowledgment," we held that, under Massachusetts law, the recording of the unacknowledged mortgage was "not effective to give constructive notice to third parties." <u>Id.</u> at 112-13; <u>see</u>

also In re Ryan, 851 F.2d at 507 (holding that a mortgage which lacked the signature of one witness per the requirements of Vermont law "could not serve as constructive notice of [the existence of that mortgage] to a future purchaser").

But here, our inquiry focuses on notice of the "foreclosure of [Tran's] equity of redemption," since that is the "transfer" with which the Bankruptcy Code is concerned, 11 U.S.C. § 101(54)(C), and not on notice of a mortgage, as in In re Mbazira, which must be evidenced by the recording of a deed, see 15 F.4th at 111. Thus, even though, in other contexts, a recorded affidavit of sale cannot give constructive notice of the conveyance of a real property interest, here we are not dealing with such a conveyance, but with the extinguishment of a mortgagor's equity of redemption through the sale itself. And although we have no prior case on this precise issue, we see no reason why a properly recorded affidavit of sale would not provide the requisite notice of the very sale it memorializes. As such, we are persuaded by the Bankruptcy Court for the District of Massachusetts's suggestion in another case that a properly recorded affidavit of sale would "put the world on notice that the foreclosure sale had been consummated, so that the failure to record the foreclosure deed itself might not present difficulties." Weiss v. U.S. Bank, N.A. (In re Mularski), 565 B.R. 203, 208 n.2 (Bankr. D. Mass. 2017); cf. Cerrato v. BAC Home Loans Servicing (In re Cerrato),

504 B.R. 23, 33 (Bankr. E.D.N.Y. 2014) (holding that a "Report of Sale" provided "express notice" under New York law that a foreclosure sale had been conducted).

Indeed, the presence of the properly recorded affidavit of sale here distinguishes cases where the Bankruptcy Court for the District of Massachusetts declined to find constructive notice of a "transfer" of a debtor's equity of redemption at a foreclosure sale. See In re Mularski, 565 B.R. at 208 & n.2; Neiva v. Loancare, LLC (In re Neiva), No. 23-40098, 2024 WL 544049, at *6–7 (Bankr. D. Mass. Feb. 9, 2024). In each of those decisions, no documents had been recorded prior to the debtor's bankruptcy petition.[3]

To be sure, Tran correctly notes that a recorded affidavit of sale does not provide "conclusive proof of compliance" with recording requirements under Massachusetts law, such that the transfer of the property to Jacobs could not have been perfected by the affidavit of sale. See Fed. Nat'l Mortg. Ass'n v. Hendricks, 977 N.E.2d 552, 558 (Mass. 2012); Mass. Gen. Laws ch. 244, § 15(b) (2024) (providing that an affidavit of sale may

---

[3] In In re Giacchetti, the bankruptcy court noted, while deciding a different issue, that "a bankruptcy trustee cloaked with the status of a bona fide purchaser . . . may avoid the transfer of a debtor's interest in property at a foreclosure sale if the deed was not recorded prior to the bankruptcy filing." Giacchetti v. Everhome Mortg. (In re Giacchetti), 584 B.R. 441, 448 (Bankr. D. Mass. 2018). But a review of the docket in that case suggests that no documents relating to the foreclosure sale were recorded prior to the debtor's bankruptcy petition. As a result, this case is also distinguishable.

- 14 -

"be admitted as evidence that the power of sale was duly executed"). But the question is not whether the affidavit of sale perfects the conveyance of the Property from the Bank to Jacobs. Rather, the relevant question is whether the affidavit of sale provides notice of the extinguishment of Tran's equity of redemption. And, as we have explained, it does.

Finally, Tran contends that the affidavit of sale "lives or dies" with the deed; "that is, if the deed is void, so is the memorandum or affidavit." But he cites no authority for this proposition and does not elaborate on it, so we need not address it. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

As a result, we agree with the bankruptcy court that the affidavit of sale provided constructive notice of the foreclosure under Massachusetts law. For that reason, we need not reach the question of whether the improperly recorded foreclosure deed would independently suffice. We therefore conclude that Tran cannot avoid the "transfer" of his equity of redemption in the Property.

### III.

For the foregoing reasons, we **affirm** the judgment of the bankruptcy court.

- 15 -